IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**KATHERINE MAE SANDERS**                                                                 **PLAINTIFF**

v.                              No. 1:13CV00006-SWW-JJV

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                        **DEFENDANT**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright. A party to this dispute may object to this recommendation in writing. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing the record evidence. An objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for that purpose, must address the following matters as part of written objections: (1) why the record before the

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing. Based on this submission, Judge Wright will determine the need for a hearing.

## Recommended Disposition

Katherine Mae Sanders seeks judicial review of the partial denial of her application for social security disability benefits.[3] Ms. Sanders last worked in May 2008 as a store clerk.[4] She bases disability on neck injury, depression, prior lung failure, prior liver failure, prior kidney failure, chronic headaches, right side paralysis, and shortness of breath.[5] She maintains she has been disabled since May 2008.

**The Commissioner's decision**. After considering the application, the Commissioner determined Ms. Sanders was disabled beginning February 15, 2010, based on the residual effects of pneumonia and the H1N1 virus.[6] Prior to that date, the ALJ determined Ms. Sanders could have done some light work, to include her past work as a laborer on a

---

[3] SSA record at p. 147 (applying for disability benefits on May 18, 2010 and alleging disability beginning July 10, 2008), p. 154 (changing onset date to Jan. 9, 2008) and p. 33 (amending onset date to May 1, 2008).

[4] *Id*. at pp. 169, 177 & 189.

[5] *Id*. at p. 168.

[6] *Id*. at p. 12 (identifying dysthymic disorder, status post multiple organ failure due to H1N1 virus, and disorder of the cervical spine as severe impairments beginning Feb. 15, 2010), p. 15 (determining Ms. Sanders could do some light work, but would be off task one-third of workday beginning Feb. 15, 2010) and p. 19 (concluding that Ms. Sanders became disabled on Feb. 15, 2010).

poultry processing line.[7] Because a person who can do her past work is not disabled under social security law, the ALJ determined Ms. Sanders was not disabled before February 15, 2010.[8] Thus, the ALJ awarded benefits beginning February 15, 2010.  Because Ms. Sanders sought earlier benefits, she asked the Appeals Council to review her case.[9]

After the Appeals Council denied review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Ms. Sanders filed this case to challenge the denial of earlier benefits.[12] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]

---

[7]*Id*. at p. 18.

[8]*Id*. at p. 19.

[9]*Id*. at p. 84.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) ("the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Ms. Sanders's allegations**.  Ms. Sanders challenges the determination that she wasn't disabled before February 15, 2010.  She says the medical evidence about the date of the onset of her disability is ambiguous and the ALJ should have asked a medical expert about the date.  She insists she was disabled before February 15, 2010, due to depression, neck pain, and pancreatitis.  For these reasons, she maintains substantial evidence does not support the unfavorable aspect of the ALJ's decision.[14]

**Applicable principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Ms. Sanders could have done some light work, to include her past work as a laborer on poultry processing line, before February 15, 2010.[15]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[16]  The ALJ placed the following limitations on light work: (1) occasional balancing, stooping, kneeling, crouching, crawling, and climbing; (2) simple, routine, repetitive tasks; (3) simple work-related decisions; and (4) incidental contact with co-workers, supervisors, and the general public.[17]  The court must determine whether a reasonable mind would accept the evidence as adequate to show Ms. Sanders could have done worked within these parameters before

---

[14]Docket entry # 12.

[15]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[16]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[17]SSA record at p. 13.

February 15, 2010.

After carful consideration of the record, the Court concludes that a reasonable mind would accept the evidence as adequate because the medical evidence shows little physical or mental impairment **before February 15, 2010**. Therefore, the Court recommends that the Commissioner's decision be affirmed.

Ms. Sanders insists depression, neck pain, and pancreatitis prevented her from working before February 15, 2010. But this allegation, alone, isn't not enough to prove disability. The determination about a claimant's ability to work must be supported by medical evidence.[18] And while the Court is sympathetic to Ms. Sanders's claims, most of the medical evidence flowed from a March 2010 hospitalization.

On March 2, 2010, Ms. Sanders was hospitalized for acute respiratory distress syndrome and multiple organ failure flowing from pneumonia and the H1N1 virus; she

---

[18] 42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

required extensive mechanical ventilation.[19] After she was stabilized, Ms. Sanders underwent rehabilitation.[20] With treatment, rehabilitation, and time, Ms. Sanders improved.[21] To the extent the ALJ erred about the date of the onset of disability, the error does not act in Ms. Sanders's favor, because there is no medical evidence showing Ms. Sanders was disabled as early as February 15, 2010. Identifying that date as onset requires presuming Ms. Sanders was disabled two weeks before her hospitalization. There was no need to consult a medical expert about the possibility of an earlier onset date because there is no medical evidence from November 2, 2009, to March 2, 2010.

Prior to the March 2, 2010, hospitalization, Ms. Sanders complained about neck pain and depression.[22] Her primary care provider (PCP) prescribed pain relievers and anti-depressants, but recommended no speciality care. Importantly, the medical evidence reveals that Ms. Sanders's symptoms responded to treatment.[23] "An impairment which can be controlled by treatment or medication is not considered disabling."[24] The PCP's failure to recommend speciality care — orthopedic care for neck pain or mental health treatment

---

[19]SSA record at pp. 258, 367.

[20]*Id*. at p. 523 (hospital discharge summary; discharged April 22, 2010).

[21]*Id*. at p. 616 (per agency examiner on Mar. 3, 2011, recovery from multiple organ failure is very good; mild physical limitations).

[22]*Id*. at pp. 284-92.

[23]*Id*. at p. 289 (Dec. 16, 2008, depression is better) and p. 283 (pain medication is controlling pain well).

[24]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

for depression — also supports the ALJ's conclusion.

In May 2009, Ms. Sanders developed acute pancreatitis.[25] Realizing acute pancreatitis can cause intense abdominal pain, nausea, and vomiting, the medical records show that the condition resolved.[26] There is no evidence pancreatitis prevented Ms. Sanders from working for a continuous period of not less than twelve months.[27] Pancreatitis provides no basis for disability.

The evidence also supports the ALJ's conclusion that Ms. Sanders was capable of performing her past relevant work before February 15, 2010. Medical experts twice reviewed Ms. Sanders's treatment records: five-and-one-half months after the March 2, 2010, hospitalization and fourteen months after the hospitalization. Both times, medical experts agreed that Ms. Sanders could work within the ALJ's physical limitations.[28] Thus, even though medical experts opined that Ms. Sanders has the physical ability to do light work, the ALJ gave Ms. Sanders the benefit of the doubt by finding she was disabled after the hospitalization.

---

[25]SSA record at pp. 314-24 (May 11, 2009) and pp. 410-20 (May 19, 2009).

[26]Id. at p. 416 (May 19, 2009, slowly resolving pancreatitis) & p. 310 (July 11, 2009, probably not pancreatic at this time).

[27]See 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits). See also 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[28]SSA record at p. 543 (Aug. 20, 2010) and p. 629 (Apr. 25, 2011).

To the extent Ms. Sanders relies on depression, the psychological examiner reported no significant limitations in adaptive ability or completing tasks in a timely fashion.[29] During the evaluation, Ms. Sanders attributed depression to the 1998 death of her son,[30] but she worked for many years after her son's death. She attributed not working to physical impairment and reported getting along with co-workers, supervisors, and the public.[31] A mental health expert opined that Ms. Sanders can do unskilled work involving tasks learned and performed by rote, few variables, little judgment, incidental interpersonal contact, and simple, direct, concrete supervision.[32] That is the type of work the ALJ required.

In the past, Ms. Sanders worked as a laborer on a poultry processing line. The ALJ asked a vocational expert about work for a person with Ms. Sanders's limitations.[33] The vocational expert testified that a person with those limitations can work as a laborer on a poultry processing line. The vocational evidence supports a conclusions that Ms. Sanders was capable of performing her past work.[34]

---

[29]*Id*. at p. 587.

[30]*Id*. at p. 585.

[31]*Id*. at p. 586.

[32]*Id*. at p. 596.

[33]*Id*. at p. 76.

[34]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

**Conclusion and Recommendation**

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision. The ALJ made no harmful legal error. For these reasons, the Court recommends DENYING Ms. Sanders's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 11th day of February, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE